### Sol Katzenstein v. Reid, Murdock & Company.

Decided December 6, 1905.

**1.—Discharge in Bankruptcy—Does not Release, When.**

Sections 14 and 17 of the Bankruptcy Act, as amended by the Act of February 5, 1903, construed and held to be harmonious. The former section refers only to representations which will prevent a judgment of discharge. The latter does not require that the false representations which will prevent the judgment of discharge from operating to release the debt must be in writing.

**2.—False Representation to Commercial Agency.**

A written representation as to solvency, made to a commercial agency, for the purpose of being communicated to third persons to influence them to extend credit to the maker, is a representation in writing to such third persons.

**3.—Proof of Claim in Bankruptcy—Effect of.**

By proof of his claim in the bankrupt court and receiving dividends, a creditor is not precluded from suing for any balance that might be due if his debt is of the character mentioned in section 17 of said Act.

Appeal from District Court of Bexar. Tried below before Hon. A. W. Seeligson.

*Clark & Davis,* for appellant.—A discharge in bankruptcy relieves the bankrupt from the payment of all his provable debts, unless, among other things not applicable to this case, he has obtained property on credit from some person upon a materially false statement in writing, made to such person for the purpose of obtaining such property on credit; or, in other words, obtained property by false pretenses or false representations made in writing to such person for said purpose; and as the undisputed evidence shows that appellant did not do the aforesaid things, there is no authority in the record for the judgment of the lower court. Sec. 14, subdiv. 3, Bankrupt Act of 1898 as amended in 1903 (Collier); Sec. 17, subdiv. 2, same; Subdiv. 3, sec. 14, pp. 171-173, Collier on Bankruptcy; Id., p. 197, under sec. 17; Alston v. Robinett, 37 Texas, 57; Brown v. Causey, 56 Texas, 343; In re Rhertossee, 2 Am. Bank. Rep., 701.

A written report by a debtor to a mercantile agency of his financial condition, though it does not contain all of his liabilities, unless made as a special report for the express purpose of obtaining merchandise on credit, and to be communicated to the creditor to induce him to make the sale, is insufficient to prevent a discharge in bankruptcy from relieving the debtor from the payment of all his provable debts scheduled in his petition for adjudication as a bankrupt, and certainly this is the law where the mercantile statement is made offhand and without reference to his books or other records. Collier on Bankruptcy, p. 172, subdivis. 3 and 4; Id., 173; In re Steed, 107 Fed. Rep., 685.

Sections 14 and 17 of the Bankrupt Act as amended by the Act of February 5, 1903, refer to the same subject matter and must be construed together, and if possible, each harmonized and given sensible effect, and in the construction of said provisions the context and circumstances of each must be considered in arriving at the intention of Congress in passing said sections. Cox v. Houston & T. C. Ry., 68 Texas, 229; Duncan v. Taylor, 63 Texas, 649; McInery v. City of Galveston, 58 Texas, 340; Storrie v. Houston Street Ry., 92 Texas, 144; Mills Co. v. Lampasas Co., 90 Texas, 606; Edwards v. Morton, 92 Texas, 153; Citizens' Ry. v. Ford, 93 Texas, 113; Weber v. Rogan, 94 Texas, 68; Smith on Stat. Const., secs. 218 and 246; Endl. on Int. of Stat., sec. 72.

The intention of the law-makers will prevail over the strict letter. Storrie v. Houston Street Ry., 92 Texas, 144; Walker v. State, 7 Texas Crim. App., 258; Albrecht v. State, 8 Texas Crim. App., 315; Chapman v. State, 16 Texas Crim. App., 76; Cannon v. Vaughn, 12 Texas, 401; Dallam, 362.

Every part of a statute, though in different sections, but upon the same subject, must be considered to discover the legislative intent. State v. Delesdenier, 7 Texas, 106; Higgins v. Rinker, 47 Texas, 401; McDougale v. Hadley, 1 Texas, 492; Graves v. State, 6 Texas Crim. App., 235; Morgan v. Davenport, 60 Texas, 234; Lufkin v. City of Galveston, 63 Texas, 439.

In seeking for the intention of the law-makers, courts look to all of the surrounding circumstances and the object to be accomplished by the statute. Rosenberg v. Shaper, 51 Texas, 140; Hanrick v. Hanrick, 54 Texas, 110.

Statutes should be construed according to the manifest intent of the law-makers, to be gathered from the language used. Boon v. Chamberlain, 82 Texas, 482.

Statutes in pari materia are construed together. Fowler v. Poor, Dallam, 402-403; Bryan v. Sundberg, 5 Texas, 424; Selman v. Wolfe, 27 Texas, 72; Taylor v. Hall, 71 Texas, 218; Walker v. State, 7 Texas Crim. App., 259; Cannon v. Vaughn, 12 Texas, 402; Cain v. State, 20 Texas, 362; Keenan v. Perry, 24 Texas, 257; Scoby v. Sweatt, 28 Texas, 727; Bonner v. Hearne, 75 Texas, 252; Ex parte Schmidt 2 Texas Ap., 202; Mock v. State, 11 Texas Ap., 58.

It was the intention of Congress in 1903, in amending sections 14 and 17 of the bankrupt law of 1898, to give the creditor the right to sue the debtor in the State Court after the debtor's discharge as a bankrupt, only on claims where the bankrupt had obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit, and not for obtaining property by false pretenses or false representations in any other manner than above stated.

FLY, ASSOCIATE JUSTICE.—This is a suit by appellees against appellant instituted to recover a balance of $1,038.68 due on an account for merchandise sold by appellees to appellant. It was alleged in the petition that from September, 1903, and up to and including November 27, 1903, appellant was insolvent and that while so insolvent he falsely represented to appellees, and to certain mercantile agencies, that he was solvent and had assets largely in excess of his debts and liabilities, and that appellees relying on such representations were thereby induced to sell appellant the merchandise itemized in the account. That the false and fraudulent representations were made with the secret, fraudulent intent to obtain the goods from appellees and then to never pay for the same. That on November 27, 1903, appellant filed his petition in the District Court of the United States, for the Western District of Texas, praying that he might be adjudged a bankrupt. That appellees immediately filed a suit in said Federal Court praying that said sale be rescinded and that said goods be adjudged to be the property of appellees; that said decree was rendered, but only a portion of the goods could be found, those not found being of the value of $1,153.97. That said claim was allowed by the referee in bankruptcy and the sum of $115.29 was paid thereon. Appellee filed general and special exceptions and pleaded in bar of the suit that appellees had propounded their claim in the bankrupt court and the same was allowed and approved and part of it paid, and that appellant having thereafter been discharged was thereby relieved from all liability to all of his creditors, among the number being appellees. That when the goods were purchased on or about March 1, 1903, appellant was wholly solvent and able to pay all his debts and that at the time appellant made the statement to the commercial agencies he was solvent. A jury was waived and the court rendered judgment in favor of appellees for $1,055.90.

It was shown that appellees are merchants in the city of Chicago, and in January, 1903, opened an account with appellant, his first order being dated January 20, 1903, and the last about November 13, 1903. When

the first order was received appellees applied to Bradstreet Commercial Agency and the Commercial Agency of R. G. Dun & Co., for detailed reports as to the financial standing of appellant and on January 23, 1903, received reports from the agencies and another from the Bradstreet Agency on September 8, 1903. In the report of Dun & Co., was a signed statement of appellant as follows: "Total assets twenty-one thousand nine hundred and thirty dollars, total liabilities ten thousand five hundred, leaving a net worth of eleven thousand four hundred and thirty dollars." In the statement made to the Bradstreet Company appellant represented that his gross assets were $22,430, total liabilities, $10,500, net worth, $11,930. Relying on those statements appellees extended to him credit for the goods for whose value this suit was instituted as well as other goods. Early in November appellees endeavored to obtain a statement as to appellant's financial condition from appellant, who failed to give the same but even as late as November 14, 1903, not more than two weeks before he, on his voluntary application, was adjudged a bankrupt, was endeavoring to obtain more merchandise from appellees. Appellant did not give a true statement of his assets and liabilities to the mercantile agencies. He admitted owing at least $10,000, which was not included in his list of liabilities. Only a few days before appellant stated to the mercantile agencies that his total liabilities were $10,500, he swore that they were $20,690.26, being $500 in excess of the assets as sworn to by him and we conclude that appellant knew at the time he made the statement to the mercantile agencies that his liabilities exceeded his assets. ·

It is provided in section 14 of the Bankruptcy Act, as amended by the Act of Congress of February 5, 1903, that an application for the discharge of a bankrupt shall be granted unless he has done certain things, the third being, "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit." In section 17 of the Bankruptcy Act as amended by the Act of February 5, 1903, it is provided: "A discharge in bankruptcy shall release a bankrupt from all of his probable debts except such as . . . (2) are liabilities for obtaining property by false pretense or false representations, etc."

These two sections should undoubtedly be construed together, as argued by appellant, and following that plan of construction we arrive at the conclusion that the two sections are perfectly harmonious, section 14 providing for the discharge of a bankrupt unless it should appear· that certain acts have been done by him, and section 17 setting forth the debts from which the bankrupt shall be released by such discharge. Each bears upon a different subject, the one relating to the discharge, the other to the debts from which such discharge will relieve the debtor. The matters and things which will prevent a discharge in bankruptcy are different from those set out in the section which will not relieve from liability in case there is a discharge of the bankrupt. The bankrupt may be discharged and still be held liable for the classes of debts mentioned in amended section 17 of Act of 1903, and in seeking to hold a party liable, who has been discharged in bankruptcy, the ground for such liability must be found in section 17 and not in section 14 which enumerates grounds upon which a discharge shall be refused.

(Brandenburg Bank., p. 275; In re Lewensohn, 99 Fed. Rep., 73; In re Rhutassel, 96 Fed. Rep., 597; Forsyth v. Vehmeyer, 177 U. S., 177; Bullis v. O'Beirne, 195 U. S., 606; In re Steed, 107 Fed. Rep., 685.)

There is no requirement in amended section 17, as to the manner in which the false pretenses or false representations shall be conveyed to the defrauded party, and we do not believe that the national Legislature intended that a requirement that such pretenses or representations should be in writing should be read from section 14 into section 17. In the first section it is provided that the bankrupt shall not be discharged if he has obtained property on credit upon a materially false statement in writing made to the person defrauded for the purpose of obtaining such property on credit, but in section 17 it provides that such discharge will not release the bankrupt from liabilities for obtaining property under false pretenses. The two provisions are not antagonistic and there is no warrant for reading one into the other. In all the cases coming under our inspection on this subject the section setting forth the debts from which a discharge will not relieve the bankrupt has alone been consulted and construed and not in connection with the section referring to discharges. (Bullis v. O'Beirne, before cited.)

If it were true, however, as insisted by appellant, that the two sections must be so construed together as to read into section 17 a requirement that the false pretenses or false representations be in writing, the proof in this case meets the requirement. The false representations were made in writing to two mercantile agencies for the purpose of obtaining credit from appellees. As said by the Court of Appeals of New York, in Eaton v. Avery, 83 N. Y., 31: "A person furnishing information to such agency in relation to his own circumstances, means and pecuniary responsibility, can have no other motive in so doing than to enable the agency to communicate such information to persons who may be interested in obtaining it for their guidance in giving credit to the party; and if a merchant furnishes to such an agency a wilfully false statement of his circumstances or pecuniary ability, with intent to obtain a standing and credit to which he knows that he is not justly entitled, and thus to defraud whoever may resort to the agency, and in reliance upon the false information there lodged, extend a credit to him, there is no reason why his liability to any party defrauded by those means should not be the same as if he had made the false representation directly to the party injured." The foregoing language has been approved in the case of National Bank v. Bomberger, 77 Texas, 48, in which case the false representations were to Dun's Commercial Agency and the defrauded parties acted on information given to such agency. The court said: "If the false representation be made with a view of reaching the third person to whom it is repeated, and for the purpose of influencing him, they will afford a cause of action." The false representations in this case were made to the agents of appellees who had been employed to obtain information as to the financial standing of appellant. He knew the purpose the agent had in view, in asking him as to his financial standing, and if he made the report "off-hand and without reference to his books or other records," as he stated, he will still be held for the falsity of his report.

Speaking on the question of the liability of a party for a representa-

tion as to his financial standing, carelessly made, the Supreme Court in Morrison v. Adoue, 76 Texas, 255, said: "A false statement made by a buyer who has full opportunity to know whether it is true or not, in reference to a material fact, although it may not be actually known by him to be false, also furnishes ground for avoidance of the sale if it be made when he has no reason to believe it to be true." See also Wright v. United States Mortgage Co., 42 S. W. Rep., 789. The facts in this case not only showed that appellant had no reason to believe the statements made by him to be true, but the circumstances lead to the irresistible conclusion that he was thoroughly conversant with the condition of his finances and knew that he was insolvent, and that the statements were made with the intent to deceive those from whom he intended to purchase merchandise.

Under the fifth, sixth and seventh assignments of error the proposition of law is that "a creditor must allege and prove, before he is entitled to recover on account of fraud, with or without a bankrupt law, that the representations made by the debtor were material, and made to a creditor or some one known to be acting for him, for the purpose of the creditor acting on them; and that the creditor did actually act on them and was thereby deceived and defrauded in the sale of goods to the debtor." It was alleged and proved in this case that the representations made by appellant were material, and were made to the agent of appellees for the purpose of appellees acting on them, that they did act on them and were thereby defrauded and deceived in the sale of the goods to appellant. It was alleged that appellant, while knowingly insolvent, with intent to deceive and defraud appellees falsely and fraudulently represented to their agent that he was solvent and had assets largely in excess of his liabilities, and that appellees relying on such representations sold the goods to appellant and were defrauded of them. It was proved that as soon as appellant applied to appellees for credit they applied to two commercial agencies for detailed reports as to his standing, and credit was not extended to him until those reports were made. The credit manager of appellees swore: "I relied implicitly on both Dun's and Bradstreet's detailed reports as each contained a signed statement from Sol Katzenstein, taken from his inventory of January 1, 1903, showing a net worth of over eleven thousand dollars."

Under the eighth, ninth, tenth and eleventh assignments of error the propositions are presented that a creditor who has proved up his claim in the bankrupt court, received his dividends and does not contest the bankrupt's application for a discharge, has had his day in court and a suit on any claim against the bankrupt, that arose prior to the proceedings in bankruptcy, would be a collateral attack on the decree discharging the bankrupt. The authorities cited to sustain those propositions fail to sustain them. On the other hand the statute itself would be sufficient to destroy the proposition. The statute as to debts not released by the discharge in bankruptcy does not confine itself to the debt of those only who have not accepted the benefits of the dividends paid by the bankrupt court, but it is sweeping in its provisions and makes no exception of any who may hold the character of debts mentioned. There is abundant authority to support this proposition.

In the case of Lewensohn, hereinafter cited, it was said: "The

claims proved were goods sold and delivered, nothing being said about the false representations by which they were procured. In the suits, the sale and delivery of the goods are alleged, and the specific false representations by which they were procured are stated, and judgment asked for the value of the goods. . . . All those claims were provable debts, and proof of them before the referee in no way prejudiced the creditors' remedy under the State law by arrest, on account of the fraud by which the sale and delivery of the goods were procured."

Discussing the question of the discharge of a bankrupt Judge Shiras in the Rhutassel case, already cited, said: "The right to a discharge is one thing, and the effect of it, when granted, is another, and wholly distinct proposition. . . . The issue upon the effect of a discharge will arise when a creditor seeks to enforce a judgment or claim, and the debtor pleads his discharge in bar thereof. This question was very fully and carefully considered by Judge Woolson in In re Thomas, 92 Fed. Rep., 912; and I concur in the conclusion reached by him, that the proper place and time for the determination of the effect of the discharge is when the same is pleaded or relied upon as a defense to the enforcement of the particular claim."

The statute does not condition the right of a creditor to sue and establish his claim against a discharged bankrupt on the fact that he did not prove up his claim before the referee and receive dividends, but it declares that certain debts are not released by the discharge and the doing of those things will not estop him from prosecuting his suit. It is too clear for argument that the prosecution of such a suit would not be a collateral attack on the judgment discharging the bankrupt. The very language of the decree excepts the debts excepted by section 17. The case of McWilliams v. Thomas, 74 S. W. Rep., 596, cited by appellant has no application whatever to the facts of this case.

All the points presented in the fourteen assignments of error have been discussed and no error being presented by them requiring a reversal, the judgment is affirmed.

*Affirmed.*

Writ of error refused.