**John W. PRICE, Appellant,**

**v.**

**Floyd H. HAKER et ux., Appellees.**

**No. 16965.**

Court of Civil Appeals of Texas.

Dallas.

July 28, 1967.

Rehearing Denied Sept. 29, 1967.

Richard W. Luerssen and John W. Price, Dallas, for appellant.

John Fox Holt, Dallas, and Jack G. Howe, Waxahachie, for appellees.

BATEMAN, Justice.

This is a suit on a promissory note in the amount of $21,698.26 signed by the appellee Floyd H. Haker and payable to appellant, and for an additional sum of $550 lent by plaintiff to the defendant on October 2, 1964. In an amended petition appellant sued Floyd H. Haker and his wife, Mary K. Haker, alleging that she was an undisclosed partner of her husband and that the note was executed for and on behalf of her separate property with her consent. The appellees pled that the claims were discharged in bankruptcy and barred by the two-year statute of limitation. Mrs. Haker also pled her coverture. At the conclusion of a nonjury trial the court rendered judgment that appellant take nothing against the appellees. We affirm.

█ Findings of fact and conclusions of law were filed. No statement of facts was filed, and no attack is made upon the findings of fact. Under these circumstances we must presume that such findings are supported by sufficient evidence and that every fact necessary to support the findings and the judgment, within the scope of the pleadings, was proved at the

trial. Lane v. Fair Stores, 150 Tex. 566, 243 S.W.2d 683 (1951); Mulcahy v. Cohen, 377 S.W.2d 100 (Tex.Civ.App., Houston 1964, writ ref'd n. r. e.).

For a statement of the facts of the case, therefore, and to give more of the details of the pleadings, we quote the findings of fact, as follows:

"1. On October 2, 1964, defendant Floyd Haker asked plaintiff John Price for a loan of $550.00 to cover expenses of a business trip to Mexico City.

"2. At the time he asked for this loan, Haker represented to Price that he had earned a commission or fee of about $25,000.00 on a transaction involving financing of an apartment house project, which had already been closed in New York City, subject to disbursal of funds, and he exhibited to Price a telegram stating that the transaction had been closed and that the funds due to Haker for the commission would be in a Dallas bank the following Monday.

"3. Such representations were false, and Haker knew they were false at the time he made them.

"4. The telegram exhibited by Haker to Price on October 2, 1964, was a materially false statement in writing respecting Haker's financial condition and was exhibited to Price with intent to deceive.

"5. On and before October 2, 1964, Haker and Armo-Strut Corporation, in which Haker was an officer and stockholder, were indebted to Price in a substantial amount for loans made by Price and for legal services performed by Price. Price advised Haker on October 2, 1964, that before he would lend any more money, the previous indebtedness would have to be consolidated into one note in the amount of $21,698.26. Haker agreed to do so, and, accordingly, signed the note sued on in that amount, payable $1,698.26 on October 6, 1964, and $2,-000.00 on January 6, 1965, and on the 6th day of each third month thereafter

until the entire amount was paid. The new loan of $550.00 was not included in the amount of the note.

"6. Before receiving the $550.00 in cash from Price on October 2, 1964, Haker gave Price a check of First Dallas Corporation, signed by himself as president, in the amount of $2,248.26, drawn on Republic National Bank of Dallas. This amount included the $550.00 borrowed and the first payment of $1,698.26 on the note in question, which was due on October 6, 1964.

"7. When he received the check, Price knew that First Dallas Corporation did not have funds in Republic National Bank sufficient to cover it. Price advanced the $550.00 in reliance on Haker's representations aforesaid, and such representations were a material inducement to Price in advancing such sum to Haker.

"8. The only money or property received by Haker from Price on October 2, 1964, was $550.00 in cash.

"9. (Same as No. 4.)

"10. On October 2, 1964, Haker made no request for renewal or extension of the previous indebtedness, but agreed to sign the note in question in order to induce Price to make him a new loan of $550.00.

"11. Price deposited the check for $2,248.26 the following week, but it was returned because of insufficient funds.

"12. Haker has never made any payments on the note in question, nor was the check for $2,248.26 ever paid.

"13. The present suit was filed by Price against Haker on April 24, 1965, seeking recovery on the note alone.

"14. On or about June 15, 1965, Haker filed a voluntary petition in bankruptcy in which the promissory note in this suit was duly scheduled.

"15. On October 6, 1965, Price filed his sworn proof of the note in question in the bankruptcy court.

"16. On January 6, 1966, Haker received a discharge in bankruptcy.

"17. On October 21, 1966, more than two years after the occurrence of the October 2, 1964, transaction, Plaintiff filed his Second Amended Petition in which he sued on the said promissory note dated October 2, 1964, and alleged for the first time the following:

" 'III. That the acceptance of the aforesaid note by John W. Price was induced by the fraudulent representations of Floyd H. Haker as to his worth and funds he was to receive and without said fraudulent representations said note would not have been accepted by the Plaintiff herein.

" 'IV. That simultaneously with the execution and delivery of the note which is the subject hereof, the Defendant, Floyd H. Haker did execute and deliver to the Plaintiff a check in the amount of $2,248.26, which represented a payment of $1,698.26 plus accrued interest on the debt which was renewed on said note and $550.00 cash. Said check, which is attached hereto marked Exhibit B and made a part hereof for all purposes, was not honored by the bank because of insufficient funds to Plaintiff's damages of $550.00.'

"18. The indebtedness represented by the note in question did not involve the separate property of defendant's wife, Mary K. Haker."

Based upon the foregoing findings the court made conclusions of law: (1) that the note sued on was discharged by Haker's discharge in bankruptcy; (2) that the suit is one in contract, to enforce appellees' liability on the note, including attorney's fees, and is not a suit in tort, either for damages for deceit at common law, or for rescission and restitution in equity; (3) that the second amended petition, on which

appellant went to trial, does not state a claim in tort for the $550 advanced and, even if it did, such a claim would be barred by the two-year statute of limitations; (4) that appellant's suit on the note is barred by Haker's discharge in bankruptcy; (5) that appellant failed to establish any claim against Mary K. Haker which was binding on her separate property; and (6) that Floyd Haker owes appellant $22,248.26, but that appellant has no legal remedy to collect it.

The appellant Price contends that neither indebtedness was discharged by Haker's bankruptcy in view of § 17 of the Bankruptcy Act (11 U.S.C.A. § 35), the pertinent parts of which are:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with. intent to deceive".

We do not agree.

■ In the first place, Price cannot maintain that he was defrauded into accepting the note as an extension or renewal of the prior indebtedness. Haker, being already indebted to him in that amount for loans and legal services, requested an additional loan of $550. Price made the execution of the note for $21,698.26 a condition to his making the additional loan. Haker was not requesting an extension of time. The note was demanded by Price. It was for his benefit, not Haker's.

■ In the second place, even if the note could be said to have been induced by fraud, we would be compelled to agree

with the trial court that the suit was in contract and not in tort. Price did not allege any measure of damages resulting from tortious conduct on the part of Haker; neither did he seek rescission of the note. On the contrary, he declared on the note and demanded judgment thereon for the full amount thereof and the interest and attorney's fee stipulated therein. By doing so he waived whatever right he may have had to sue in tort. Sanger Bros. v. Barrett, 221 S.W. 1087 (Tex.Civ.App., Amarillo 1920, no writ); Scott v. Corn, 19 S. W.2d 412 (Tex.Civ.App., Fort Worth 1929, no writ; cert. den. 50 S.Ct. 249, 281 U.S. 736, 74 L.Ed. 1151); Bunting Stone Hardware Co. v. Alexander, 190 S.W. 1152 (Tex. Civ.App., Dallas 1917, no writ).

Price relies on Katzenstein v. Reid, Murdock & Co., 41 Tex.Civ.App. 106, 91 S.W. 360 (Tex.Civ.App., San Antonio 1906, writ ref'd) and Ehlinger v. Speckels, 189 S.W. 348 (Tex.Civ.App., San Antonio 1916, writ dism'd), but those cases are not in point here. In each of them the debt itself was created through false representations. Not so in the case at bar. Price does not even contend that the original debts which were consolidated in the note were created through fraud, and under the circumstances he will not be heard to say that the note itself was so created. The uncontested findings of the trial court will support no such theory.

■ As to the claim for $550, the amended petition on which Price went to trial does not even allege that he was induced to part with $550 by the false representations, but even if the pleading could be construed to contain such an allegation the claim would be barred by the two-year statute of limitation, Vernon's Ann.Civ.St., Art. 5526, as held by the trial court. Quinn v. Press, 135 Tex. 60, 140 S.W.2d 438, 128 A.L.R. 757 (1940); Jenkins v. Kimbro, 380 S.W.2d 189 (Tex.Civ.App., Austin 1964, writ dism'd); Lacy v. Carson Manor Hotel, 297 S.W.2d 367 (Tex.Civ.App., Dallas 1956, writ ref'd n. r. e.).

Price contends that his claim for $550 is not so barred because the filing of the original petition on the promissory note tolled the statute, the claim for the $550 having arisen out of the same transaction in which the note was signed, citing Art. 5539b, V.A.C.S. We do not agree with appellant. In our opinion, the lending of the $550 was "a new, distinct or different transaction and occurrence" and, whether induced by fraudulent representations or not, it was barred. Farmers & Merchants Nat. Bank v. Arrington, 98 S.W.2d 378 (Tex.Civ.App., Eastland 1936, no writ).

All of appellant's points of error are overruled and the judgment appealed from is affirmed.

Affirmed.