**In the Matter of Giuseppe MATERA, Bankrupt.**

**Peter J. CARINI, Plaintiff-Appellee,**

v.

**Giuseppe MATERA, Defendant-Appellant.**

**No. 75–B–719.**

United States District Court, E. D. Wisconsin.

Sept. 13, 1977.

Peter J. Carini, pro se.

Edward F. Neubecker, Milwaukee, Wis., for defendant-appellant.

REYNOLDS, Chief Judge.

This matter is before the court on the appeal of Giuseppe Matera from an order of the bankruptcy court granting plaintiff Peter J. Carini judgment against the defendant in the amount of $3,750. The bankruptcy court held that the debt was nondischargeable under § 17a(2) of the Bankruptcy Act. For the reasons hereinafter stated, the order is affirmed.

The detailed findings of fact made by the bankruptcy court must be accepted by this court unless they are clearly erroneous. Bankruptcy Rule 801. The defendant does not dispute the findings but rather challenges the conclusion drawn from them. This Court will discuss these findings as is necessary to deal with the issues raised by the defendant.

The parties, both born in Sicily, were close friends. They had met while working

at the Palermo Bakery in Milwaukee. In the spring of 1973, Matera opened his own bakery. Carini, at that time an insurance salesman, visited the shop frequently. During one of these visits, Matera represented to Carini that he was "taking in" $60,000 a year on one of his accounts. On another visit, Matera represented to Carini that he was able to "pull out" $18,000 from the business.

In the spring of 1974, Matera told Carini that he wanted to expand the bakery to enable it to compete for certain large accounts. He asked Carini to loan him $5,000 for this expansion. On April 16, 1974, Carini agreed to loan Matera $5,000 at 10% interest. In addition, Matera convinced Carini to come to work for him at the bakery.

Prior to the loan, Carini asked to see the books but was told they were not up to date. However, approximately one week before the loan, Matera introduced Carini to the accountant for the apparent purpose of answering Carini's inquiries about the books. The accountant told Carini that the bakery had shown a profit of $4,566 for 1973. At this meeting, Carini had an opportunity to see the books and the papers the accountant had used in arriving at the $4,566 figure, but did not do so. Carini testified that he did not ask to see the books because he and Matera were like brothers, and even had he seen them, he would not have been able to understand them.

Following the loan, a number of things might have put Carini on notice of the bakery's true financial situation. First, he was receiving far less in wages than he had been promised. Matera explained this as a cash flow problem caused by customers who were not paying their bills. Second, Carini's wife, who had some background in bookkeeping, in working on the bakery's books, discovered that its checking account was overdrawn.

Carini continued to complain to Matera about the low wages. Finally, Matera began to speak of incorporating the business and giving Carini a 50% interest. Carini went so far as to have an attorney draw up papers of incorporation. These papers were never executed.

In June, Carini loaned Matera another $500, on the same terms as the previous loan of $5,000, for the purpose of acquiring a sandwich shop. Matera took over operation of the sandwich shop while Carini continued to work at the bakery.

During the next six weeks, a number of incidents caused Carini to worry about his money. The bakery lost its largest account; a mixer that Matera claimed was paid for was delivered with a due bill; and Carini found an unpaid flour bill of $5,000. On August 1, 1974, Carini came to work only to find that Matera had locked him out.

Following the lockout, Carini and Matera agreed that Carini would take over the sandwich shop and the $1,000 down payment would be applied to reduce the $5,500 loan.

On appeal, the defendant contends that the bankruptcy court erred in not discharging the debt because (1) Carini did not prove moral turpitude on Matera's part in making the representations; (2) Carini did not exercise ordinary prudence before making the loan; (3) Carini's actions following the loan constitute waiver or acquiescence; and (4) the agreement concerning the sandwich shop is a novation of the original loan agreement.

■ Matera contends that since he applied the $5,000 loan to the bakery much in the way promised, he did not perpetrate a fraud upon Carini within the meaning of § 17a(2). Section 17a(2) excepts from discharge provable debts which "are liabilities for obtaining money or property by false pretenses or false representations * *." This section does require moral turpitude or intentional wrong as essential elements of proof. However, it has been interpreted to apply to situations where reckless representations are made. *Katzenstein v. Reid, Murdock & Co.*, 41 Tex.Civ.App. 106, 91 S.W. 360 (1905).

■ Although Matera may have applied the $5,000 as represented, he did make reck-

less representations as to the profitability of the bakery, representations which apparently heavily influenced Carini. For this reason, the bankruptcy court could correctly have found that Matera made a false representation within the meaning of § 17a(2) to induce Carini to make the loan.

 Matera also contends that Carini had a duty to exercise ordinary prudence and that had he done so the deception would have been prevented. *Dyck v. Snygg,* 138 Neb. 121, 292 N.W. 119 (1940).

While this duty exists, there is evidence to support the bankruptcy court's decision. Carini and Matera had a specially close relationship in which they trusted each other "like brothers." Carini also was aware of Matera's purchase of an expensive new car and a $1,000 gift given to a relative. In regard to the books, Carini was either put off by Matera or was too unsophisticated to understand them. And in Carini's meeting with the accountant, he learned that the bakery had shown a profit for 1973. The bankruptcy court could find on these facts that, at the time of the loan, Carini had exercised ordinary prudence.

Carini's actions following the loan do not require that the bankruptcy court's order be reversed. Until six weeks prior to the lockout, Carini essentially had only his low wages to alert him to the true state of affairs, and as to these, Carini repeatedly inquired of Matera as to the reason. Matera responded to these inquiries with explanations of cash flow problems and finally with promises of a 50% interest in the business. It was not until the discoveries of the six-week period that Carini can be said to have had knowledge of the troubles besetting the bakery, and it was soon after these discoveries that he agreed to take over the sandwich shop, apparently in an attempt to prevent his loss of the loan.

Matera contends that this agreement with respect to the sandwich shop constitutes a novation of the original loan agreement. The facts, however, support the bankruptcy court's finding that a novation did not take place.

In order for a novation to take place, the creditor must accept from his debtor a new agreement in place of the prior agreement with the intent to cancel the former and to substitute the latter. *Navine v. Peltier,* 48 Wis.2d 588, 180 N.W.2d 613 (1971). The agreement between Carini and Matera did nothing more than reaffirm in writing the oral agreement and acknowledge a partial payment. To say that such agreement was intended by Carini to cancel the loan transaction is to go beyond the record in this case.

For the foregoing reasons,

IT IS ORDERED that the judgment of the bankruptcy court is affirmed.

Dated at Milwaukee, Wisconsin, this 13 day of September, 1977.