In re Victor B. SMIGEL, Debtor.

**FEDERAL DEPOSIT INSURANCE CORP., Plaintiff,**

v.

**Victor B. SMIGEL, Defendant.**

**Nos. 82 B 470, 84 A 1117.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Sept. 12, 1988.

Arthur S. Gold, Levenfeld, Gallagher & Gold, Chicago, Ill., for Victor Smigel.

John B. Huck, McBride, Baker & Coles, Chicago, Ill., for FDIC.

## MEMORANDUM OPINION AND ORDER *

DAVID H. COAR, Bankruptcy Judge.

This cause coming on to be heard on the motion of the Federal Deposit Insurance Corporation [FDIC] to alter or amend this Court's Memorandum Opinion and Order determining the dischargeability of a debt, entered on April 5, 1988, or for a new trial, and the Court, having considered the record and pleadings on file, having con-

---

* This is a revised opinion. On June 20, 1988, this Court entered a memorandum opinion and order denying the motion of the plaintiff, Federal Deposit Insurance Corporation, to alter or amend this Court order of April 5, 1988, or for a new trial. Because of the importance and novelty of the issues involved, the Court deems it appropriate to elaborate on its reasoning and hereby revises its memorandum opinion accordingly.

sidered the memoranda of law submitted by the parties in support of their respective positions, and being fully advised in the premises, now enters its ruling;

This is a core matter over which the Court has jurisdiction, pursuant to 28 U.S.C. § 157(b). For the reasons set forth below, the FDIC's motion to alter or amend this Court's Memorandum Opinion and Order of April 5, 1988, or for a new trial is denied, and the following constitutes the Court's findings of facts and conclusions of law, pursuant to Bankruptcy Rule 7052.

## BACKGROUND

On March 12 and March 13, 1987, the Court conducted an evidentiary hearing to determine the dischargeability of the debt owed to the FDIC, as successor in interest to Drovers National Bank [Drovers]. At the conclusion of the hearing the Court took the matter under advisement. On April 5, 1988, the Court entered an order finding and concluding, *inter alia,* that the FDIC had failed to establish by clear and convincing evidence the requirements of 11 U.S.C. § 523(a)(2)(B). Specifically, the Court held that the FDIC failed to meet its burden of proving that Drovers reasonably relied on the financial statement submitted by the debtor in connection with a $75,-000.00 unsecured loan.[1] At the core of the Court's April 5 opinion and order was the determination that the FDIC had failed to establish that Drovers had verified or otherwise conducted an investigation of the information contained in the statement.[2] The Court also found that the testimony of the Drovers' officers who had approved the loan was insufficient to establish that Drovers had followed even its own internal standards in approving the loan. These findings and conclusions are the principal focus of the FDIC's instant motion.

## DISCUSSION

There are three possible grounds on which a court may alter or amend a judgment or grant a new trial in a matter tried by a court: 1) manifest error of law; 2) manifest error of fact; or 3) newly discovered evidence. *FDIC v. Meyer,* 781 F.2d 1260 (7th Cir.1986). A motion to alter or amend a judgment or for a new trial cannot be used to raise argument that could and should have been made before the judgment was entered, or to argue a case under a new legal theory. *Id.* at 1268.

### A. *The Reasonableness Requirement.*

The FDIC's principal position is that Drovers was not required to make any verification under the circumstances of this case and the applicable law in 1976. The FDIC also asserts that Drovers did in fact verify the statement. Although it is not clear from the pleadings, the Court takes these assertions as arguments that the Court's ruling that Drovers' failure to verify the information contained in the financial statement is a manifest error of law.

The FDIC argues that Drovers was not required to verify the statement under applicable law in 1976. The FDIC is correct that the case law prior to 1976 did not specify just what verification a creditor must make or when, if ever, verification was necessary. It does not follow, however, that the law in 1976 recognized no duty to verify. The test to be applied in assessing a creditor's conduct in extending credit was not in 1976 and is not now whether the creditor did or did not verify a financial statement. Rather the standard is whether the creditor acted reasonably under the circumstances of a particular loan transaction. *See Matter of Bogstad,* 779 F.2d 370, 372–73 n. 4 (7th Cir.1985). If

---

1. The Court did find, however, that the FDIC established the material falsity of the statement, the intent to deceive, and actual reliance; the Court found that the representations as to the debtor's assets and interest in certain properties distorted the debtor's financial condition and that the debtor made said representations with reckless disregard for their truth or falsity. The Court's finding of actual reliance was based

upon testimony of the loan officers who approved the loan; they testified that they would not have approved the loan without the financial statement.

2. The Court found that the FDIC had proved all of the elements of § 523(a)(2)(B) except reasonable reliance.

reasonableness requires verification, then a creditor cannot be said to have acted reasonably if no verification took place. The fact that there are few cases in which courts have found lack of reasonableness because of a failure to verify may be significant, but only to the extent that the decided cases are factually similar to this case.

The FDIC cites *Carini v. Matera*, 436 F.Supp. 947, 949 (E.D.Wis.1977), *aff'd*, 592 F.2d 378, 381 (7th Cir.1979), as authority for its assertion that Drovers was not required to verify the statement under the circumstances of this case and applicable case law in 1976. *Carini* was decided by the Court of Appeals for the Seventh Circuit in 1979. The FDIC cites this case for the proposition that as late as 1979, the case law in this circuit did not require a creditor to verify information contained in a financial statement submitted in connection with a loan application. The FDIC's reliance on *Carini* is puzzling. The creditor in that case was financially naive. He *did* inquire about the debtor's books but was either put off by the debtor or was unable to understand them. He met with the debtor's accountant who assured him that the debtor's business had been profitable.

The circuit court, after commenting on the district court's finding of actual reliance, said:

> Matera next contends, correctly, that § 17(a)(2) requires a finding that the creditor actually relied upon the false representation. And of course such reliance must be reasonable. But here again it cannot be said that the court committed clear error in finding that Carini acted reasonably in relying on [the debtor's] representations.... Taking into account, as both courts have, the close friendship between the parties, Carini's observations of [the debtor's] spending habits, the repetition of the false representations over a six month span, and the other circumstances prior to the loan, the finding of reasonable reliance is supported by the evidence.

592 F.2d at 381. It is clear that the creditor in *Carini* did more than simply rely on the debtor's representations. The question was not whether the creditor did or did not verify the debtor's representations, as the FDIC would have the Court read that case, but rather whether the creditor's conduct was an exercise of ordinary prudence.

The issue in 1976 and in 1988 is whether the creditor's reliance on the false financial statement was reasonable under the circumstances. Stated differently, the issue is whether the creditor has acted with ordinary prudence. To hold that a creditor is obligated to verify information contained in a financial statement is simply to say that under the circumstances of the particular case, ordinary prudence would require verification.

In determining the circumstances under which verification is required, many courts have focused on the relationship between the creditor and the debtor. In *In re Garman*, 643 F.2d 1252, 1257–59 (7th Cir.1980), and *In re Kreps*, 700 F.2d 372, 376 (7th Cir.1981), the Seventh Circuit recognized that the existence of an on-going business relationship between a creditor and a debtor may excuse that creditor from verifying (in whole or in part) information contained in a financial statement. But where the debtor and creditor are strangers (as was the situation in this case) there is no controlling case in this circuit which states, as a matter of law, that a creditor is not obligated to verify. In *In re Bogstad*, No. 84–C–91–S, p. 4 (W.D.Wis. February 28, 1985), the district court, in reversing an order of the bankruptcy court which held that a creditor's reliance was not reasonable, made the following observation:

> [t]his court believes that in today's less than candid society the failure of a lending institution to conduct a credit investigation of the applicant or to obtain an appraisal of the real estate constitutes improper internal office procedure. However, the failure ... to verify ... does not as a matter of law render its reliance unreasonable ...

Mr. Bogstad was not clothed with a scarlet letter when making his application. Had there been evidence of appli-

cant's prior reputation for untruthfulness, any reliance upon Robert Bogstad's statement would, of course, have been unreasonable.

Thus, in the district court's view, absent facts and/or circumstances (a scarlet letter) suggesting the inaccuracy of information contained in a financial statement, a creditor is under no obligation to investigate.

In reversing the district court decision in the *Bogstad* case on other grounds, the Seventh Circuit felt obliged to comment on the district court's discussion of the requirement to verify:

> The question of the reasonableness of a creditor's reliance may be highly dependent on the particular facts of the lending transaction. Courts should not, however, be eager to intrude into the business practices of lending institutions. Nonetheless, the conclusion of the district court in this case makes us uneasy. There seems to be a significant difference between the *on-going* business relationships which, we held in *In re Garman*, 643 F.2d 1252, 1257–59 (7th Cir. 1980), *cert. denied sub nom. Garman v. Northern Trust Co.*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981), and *In re Kreps*, 700 F.2d 372, 376 (7th Cir. 1981), can excuse a bank from verifying a financial statement and the absence of a "scarlet letter" on the breast of a loan applicant who is, basically a stranger to the lender ... We also note that neither *Garman* nor *Kreps* involved almost necessarily arguable estimates of land values. Here land values are central.
>
> Further, we believe that the purpose of excluding from discharge debts obtained by fraud is to protect lenders from dishonest debtors. But the requirement of "reasonable" reliance added to § 523(a)(2)(B)(iii) by the 1978 Code surely does not mean that a creditor may "assume the position of an ostrich with its head in the sand and ignore facts which were readily available to it." *In re Blatz*, 37 B.R. 401, 404–05 (Bankr.E.D. Wis.1984) (quoting *In re Yeiser*, 2 B.R. 98, 101 (Bankr.M.D.Tenn.1979)). Here

PCA undertook no independent verification of the proffered values of either the farm or the recreational acres. Nor did it ask Mr. Bogstad to provide any support for his figures....

> In particular, representations of a landowner about the value of his real estate would seem almost routinely to evoke skepticism. Although the court should protect lenders from unscrupulous debtors, it is not our business to bail out any lender no matter how recklessly it gives out its money.

779 F.2d at 372–73, n. 4.

In the view of the Court of Appeals, where there exists no prior relationship between the debtor and creditor, common sense and ordinary prudence may require that the creditor investigate the information contained in the financial statement at least as to those items which can be easily verified.

While this discussion in the Seventh Circuit opinion is dicta, its logic and persuasive force are inescapable. Where the debtor and creditor are strangers, the circumstances of the transaction may require verification even though there is no "scarlet letter" to indicate a lack of veracity. While it may be impossible to set forth a formula which will encompass all of the circumstances which will require verification, it is clear that where the value of property or an interest in property is concerned, at a minimum, some inquiry should be made as to the basis for the value assigned to that property or interest. Where values are obviously speculative or difficult to ascertain some effort to verify is required. Reliance must be reasonable under the circumstances of the particular case. It is inappropriate for debtors to misrepresent information in financial statements. It is also inappropriate for creditors to rely upon all information provided regardless of whether prudence would suggest that the information may be incorrect. Reasonableness requires a dose of old fashioned yankee skepticism.

In the case at bar, the misrepresentations involved misstatements or omissions as to the value of the debtor's real

estate holdings, the value of his ownership interests in corporations, partnerships and other ventures, the debtor's income, certain contingent liabilities, undisclosed liabilities, the debtor's interest in certain property and encumbrances on the debtor's interest in his home. Many of these omissions and misrepresentations were speculative while others would have been revealed by simply reviewing financial statements, title reports or driving by development sites. There is no evidence to suggest that verification would have been difficult, much less burdensome in this case.

Finally, it must be noted that suggestions that prudence requires verification are often met by the contention that to so hold allow debtors to avoid the consequences of their own misrepresentations. The obvious response is that this result is a necessary outcome of the requirement of reasonable reliance in Section 523(a)(2). Moreover, in this case, the debtor might be forgiven for setting forth information carelessly and with "reckless disregard" for truthfulness. As the FDIC itself acknowledges, in making the loan to debtor, Drovers was primarily relying on the promise of Financial Security Savings & Loan Association [Financial Security] to guarantee debtor's obligations and to "take-out" Drovers when the debtor's pending loan at Financial Security was finalized. The FDIC argues that because it was primarily relying on Financial Security, any duty to verify information in Smigel's financial statement was, accordingly, diminished. But this argument has a double edge. Perhaps Smigel's culpability in misrepresenting his financial picture should be diminished by the fact that the parties understood that Drovers was looking primarily at the undertaking by Financial Security. Without attempting to assess relative blame, this is simply not a case in which the application of a duty to verify accomplishes an injustice.

The FDIC has failed to establish that the Court erred as a matter of law in its determination that Drovers' failure to verify the debtor's financial statement was unreasonable under the circumstances. Therefore the Court will not alter or amend its Memorandum Opinion and Order of April 5, 1988, or order a new trial on that ground.

## B. *Evidence of Verification.*

The FDIC also claims that Drovers did in fact verify the debtor's financial statement in accordance with its established practice. This argument must also fail. The FDIC admits that Drovers' usual verification procedure for this type of short-term unsecured loan was (i) to get a credit bureau report, (ii) to verify certain of the mortgage balances of the statement, and (iii) to check the applicant's references. The Drovers' loan officers candidly admitted that they could not recall the specific steps taken to verify the statement. The FDIC argues that since the loan was approved more than ten years ago it would have been incredible if the officers had claimed to recall their steps. The same could be said of what they did recall. Not only did they claim to recall the steps they took in approving the loan, but also that they specifically relied on the information that they could not remember verifying.

The Court notes that the FDIC cites cases[3] which address the reasonableness of creditors' investigations of financial statements, and whether those investigations complied with their normal business practices. For the purposes of this motion, the FDIC's reliance on those cases is misplaced. The Court's finding and conclusions as to Drovers' verification procedure was based upon the fact that the evidence was insufficient to establish that Drovers conducted any investigation at all, much less followed its own stated procedures. The fact that the loan officers did not recall the specific steps they took is inconclusive; it proves neither verification nor lack of verification. The FDIC claims that the testimony of the loan officers provided circumstantial evidence that the statement was verified. A review of that testimony

**3.** *In re Day,* 54 B.R. 570, 573 (D.Mass 1985); *In re Mutschler,* 45 B.R. 482, 493 (D.N.D.1984); *In re Vairo,* 40 B.R. 776, 781 (S.D.N.Y.1984); *In re* *Blatz,* 37 B.R. 401, 404 (E.D.Wis.1984); *Regency Nat. Bank v. Blatz,* 67 B.R. 88, 91 (E.D.Wis. 1986).

shows that the loan officers testified that there was no evidence in Drovers' files of a credit report or other documents which would suggest that any steps were taken to verify the statement. They did, however, point to the notation "prospective file" as indication that the file would have been verified. But that is simply to say that under Drovers' internal procedures the file should have been verified. It is not affirmative evidence that the statement was in fact verified. Therefore, the FDIC failed to show that Drovers had conducted any investigation, or even discussed the information in the statement with the debtor. Thus, the FDIC failed to establish by clear and convincing evidence each element of § 523(a)(2)(B) of the Bankruptcy Code.

■ The FDIC points out that the debtor did not raise the issue of the reasonableness of the reliance. This argument is unavailing because the FDIC had the burden of proving each element of § 523(a)(2)(B) by clear and convincing evidence. *Matter of Bogstad,* 779 F.2d 370 (7th Cir.1985). Whether the issue was argued by the debtor is simply immaterial.

Although industry standards may be relevant to the inquiry of the reasonableness of Drovers' standards in relying on a financial statement, they are immaterial to this Court's ruling since the FDIC failed to establish that Drovers did anything.

C. *The Applicability of Title 12 U.S.C. § 1823(e).*

■ The FDIC's reliance on 12 U.S.C. Section 1823(e) in this case is also puzzling. That particular statute states, in part, that:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation ...

The operative word in the statute is "agreement." This case involves no "agreement" to which § 1823(e) applies. The FDIC relies on *In re Bombard,* 59 B.R. 952 (D.Mass.1986) and *In re Boebel,* 79 B.R. 381 (N.D.Ill.1987) to argue that the FDIC has met its burden of proof

as to reliance. These cases are easily distinguished.

In *Bombard* the debtor signed a note and the FDIC took over the loan from the failing bank. The debtor then claimed that a third party had agreed to pay the loan and asserted a defense of fraud in the inducement. The court held that an oral agreement was not an adequate defense against the FDIC.

In *Boebel,* the debtors obtained a loan and used crops as security. The loan documentation provided that all the crops were in storage. At the time of the signing the security agreement the debtors told the loan officer that contrary to the documentation, a portion of the crops was still in the ground. They alleged that the loan officer told them not to be concerned and persuaded them to sign the inaccurate security agreement. The court said that conversations and oral agreements were not enforceable against the FDIC. Both cases dealt with alleged oral agreements or "understandings" which were outside of the written security agreement and not reflected in the bank's records. In the instant case there is no oral agreement. The FDIC is apparently arguing for a rule that would relieve the FDIC of the burden of proving each and every element of § 523(a)(2)(B) whenever it challenges the dischargeability of a debt as a successor in interest. The Court rejects such a reading of § 523(a)(2)(B). The issue in this case is Drovers' reasonable reliance on a financial statement, not the FDIC's reasonable reliance. A fair reading of both § 523(a)(2)(B) and 12 U.S.C. 1823(e) suggests that § 1823(e) does not apply in this case. Even if it were applicable, it is a legal theory that could have been raised prior to entry of the judgment in this case. *See FDIC v. Meyer,* 781 F.2d 1260 (7th Cir.1986); *Mitchell v. Mitchell,* 70 B.R. 524 (N.D.Ill.1987).

CONCLUSION

The FDIC has failed to set forth grounds upon which the Court could properly grant the relief requested. In effect, the FDIC has attempted to reargue its case on the

issue of reasonable reliance. The motion and arguments raised in support thereof do not demonstrate a manifest error of law or fact, and no new evidence has been presented.

IT IS THEREFORE ORDERED that the FDIC's Motion to Alter or Amend this Court's Order of April 5, 1988, or For A New Trial be and is hereby denied in its entirety.