SWYGERT, Senior Circuit Judge.
 

 This is an appeal from a judgment of the district court, affirming an order by the Bankruptcy Court granting a discharge in favor of the debtors, Orrin C. Kreps, Jr. and his wife, over the objections of the - First National Bank of Lansing (“First National”).
 
 [1]
 
 There are two issues on this appeal. First, did the Bankruptcy Court apply the correct legal standard? Second, were the Bankruptcy Court’s fact findings clearly erroneous? This appeal represents our first opportunity to interpret section 523(a)(2)(B)(iii) of the Bankruptcy Act of 1978, 11 U.S.C. § 523(a)(2)(B)(iii) (Supp. Ill 1979),
 
 [2]
 
 an issue explicitly reserved in
 
 Matter of Garman,
 
 625 F.2d 755, 759 n. 6 (7th Cir.1980),
 
 cert, denied, sub nom. Garman v. Northern Trust Co.,
 
 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981). We reverse.
 

 I
 

 Many of the relevant facts are not disputed. Kreps and First National had a close business relationship. Gilbert J. Rynberk, Jr., First National’s president, dealt personally with Kreps for fifteen years prior to the time of the loan at issue in these proceedings. First National had made a number of short-term loans to Kreps and, when requested, First National had routinely renewed these loans. These loans were related to Kreps’ home construction business.
 

 On August 17,1978 Kreps received a $32,-000 personal loan from First National. The loan was a ninety-day signature-only unse
 
 *374
 
 cured note. Possible uses of the money and Kreps’ assets were discussed. It is conceded that Kreps indicated that the money might be used for a Wisconsin land deal; Kreps, however, did not use the money for that purpose. Kreps sought and received a renewal of the loan in November 1978.
 

 In February 1979 Kreps again sought renewal of the loan. Following discussions with Kreps, Rynberk prepared a list of Kreps’ assets which Kreps signed.
 
 [3]
 
 It is undisputed that this statement contained materially false information. The statement indicated that Kreps owned two lots and a house when, in fact, he owned only the house and the lot on which the house stood. It was false in other aspects which First National does not argue were material. First National renewed the loan, and shortly thereafter Kreps filed a petition for bankruptcy.
 

 II
 

 The Bankruptcy Court found that the February 1979 written statement was materially false concerning Kreps’ financial condition and that it was made with an intent to deceive.
 
 [4]
 
 The Bankruptcy Court, however, also found that First National had not reasonably relied upon the statement. The relevant aspects of the decision are:
 

 There is a question about the purpose of giving the statement of assets. Kreps talked about the long time he had done business with plaintiff and about their simple loan procedure in the past and said he assumed the statement was needed for the file in case a bank examiner came in or something of that sort. Rynberk’s testimony was to the effect that the statement was needed to assure the bank that there were assets available if the loan was not repaid. However, it seems possible Rynberk may have said something about a bank examiner. When asked if he did, he answered “no, not that I recall” which was something less than positive.
 

 The evidence does not convince the Court that Rynberk for the bank relied upon the statement of assets when renewing the loan. The court believes the renewal was induced by the bank’s excellent loan experience with Kreps for more than 15 years.
 

 Unpublished Order Bankruptcy No. 79-60904 (November 21, 1980) at 4.
 

 
 *375
 
 In response to First National’s motion for a new trial, the Bankruptcy Court said:
 

 The evidence clearly shows that the bankrupt had obtained loans from the plaintiff for many years and that the plaintiff’s president (Rynberk) had personally handled the debtor’s loans for 15 years. There was no evidence presented at trial that financial statements or security were required by the plaintiff in past dealings with the defendant. The financial statement involved here was not given until the loan was renewed for the second time.
 

 The plaintiff’s brief charges that the court erred as a matter of law in holding that the plaintiff did not rely upon the financial statement when renewing the note. The court’s determination that there was no reliance is a finding of fact and not a matter of law, as the brief would have one believe. The execution of a financial statement does not establish that a creditor relies on the statement when a loan is granted. The party alleging reliance must make an affirmative showing of such reliance.
 
 In re Little,
 
 65 F.2d
 
 777
 
 (2d Cir.1933);
 
 Matter of Lind,
 
 6 B.R. 374 (Bkrtcy.S.D.Tex.1980); Re
 
 Ketter,
 
 5 Bankr.Ct.Dec. 1043 (E.D.Wis.1979);
 
 In re Day,
 
 11 F.Supp. 400 (D.Mass.1935).
 

 Rynberk, who personally handled the loan transaction for the plaintiff, testified that he relied on the financial statement on the second renewal of the loan. Now, if the court was bound by the testimony of loan officers about reliance, trials would end at that point and lending institutions would win 100% of the cases because in the court’s considerable experience with such cases it has never heard a loan officer testify that he did not rely upon a financial statement and does not expect to hear one do so. Looking at the evidence as a whole, the court believes Rynberk was induced to allow the loan renewal by reason of his bank’s loan experience with the debtor dating back 15 years. The court is not convinced that Rynberk would not have approved the renewal if the financial statement had not been given. The plaintiff had the burden of proof in regard to the reliance issue and the court finds it failed to meet this burden.
 
 See
 
 3
 
 Collier on Bankruptcy,
 
 Sec. 523.09(4) (15th ed. 1980).
 

 What has been said about loan officers in trials always testifying that they relied on financial statements is not intended to imply that they intentionally gave false testimony. There seems to be something in the make-up of human beings which enables them, by the processes of hindsight, self-deception, rationalization, forgetfulness and whatever else comes into play, to convince themselves that events of the past were different than what actually took place back at the time when they had only the benefit of foresight. In the field of psychology, these processes are known by the following terms: selective perception, selective retention and selective forgetfulness.
 

 Unpublished Order Bankruptcy No. 79-60904 (March 25, 1981) at 1-2.
 

 Ill
 

 Section 523(a)(2) differs in language from its predecessor, section 17(a)(2) of the Bankruptcy Code, 11 U.S.C. § 35(a)(2) (1976). Section 17(a)(2) provided in relevant part that a discharge in bankruptcy shall not release
 

 liabilities for ... obtaining [a] ... renewal of credit
 
 in reliance
 
 upon a materially false statement in writing respecting his financial condition made ... with intent to deceive....
 

 (emphasis added.)
 

 Cases interpreting section 17(a)(2) developed two judicial glosses. First, because direct proof of actual reliance is difficult, actual reliance may be proven by circumstantial evidence of reliance.
 
 See Matter of Garman, supra,
 
 625 F.2d at 759. Second, actual reliance must be reasonable,
 
 Garini v. Matera,
 
 592 F.2d 378, 381 (7th Cir.1981)
 
 (per curiam).
 
 In
 
 Matter of Garman,
 
 we discussed the meaning of “reasonable.” We held that this second aspect of the section 17(a)(2) reliance test is not meant as an invitation to “second guess a creditor’s decision to make a loan or to set loan policy for the creditor.” 625 F.2d at 761. Further, section 17(a)(2) was not intended to empow
 
 *376
 
 er the court to “undertake a subjective evaluation and judgment of a creditor’s lending policies and practices.”
 
 Id.
 
 at 759.
 
 Garman
 
 reversed the Bankruptcy Court’s finding that the creditor’s reliance upon net worth, rather than income, was unreasonable.
 

 Congress clearly indicated that section 523(a)(2)(B)(iii) is merely a codification of the cases construing section 17(a)(2). “[Tjhe creditor must not only have relied on a false statement in writing, the reliance must have been reasonable. This codifies case law construing [section 17(a)(2)].” H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 77-79 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5864, 6320.
 

 First National’s assertion that the Bankruptcy Court applied an erroneous rule of law because the Bankruptcy Court misapplied
 
 Garman’s
 
 “reasonable reliance” holding is incorrect. The Bankruptcy Court here did not determine whether First National’s reliance was reasonable. Such a determination was unnecessary because the Bankruptcy Court found that First National had not actually relied upon the false statement.
 

 After a review of the evidence, however, we are convinced that the Bankruptcy Court’s finding of non-reliance was clearly erroneous. The burden of proving each element, including reasonable reliance, lies on the creditor.
 
 See In re Taylor,
 
 514 F.2d 1370, 1373 (9th Cir.1975). First National satisfied its burden of proving actual reliance. Rynberk, the responsible bank officer, asserted that the bank would not have renewed the loan on the second occasion but for the letter furnished by the debtor. It is uncontested that First National never before sought any financial information when Kreps sought a renewal. Such increased vigilance is important circumstantial evidence of actual reliance. The debtor’s ambiguous and uncorroborated assertion that the statement was given merely to satisfy a bank examiner should be given little weight when the testimony is studied in detail.
 

 Although the Bankruptcy Court made no explicit finding as to the reasonableness of First National’s reliance, our review of the evidence indicates that a remand for entry of judgment in favor of the creditor is proper. In
 
 Garman
 
 the Bankruptcy Court had made no finding of fact concerning the debtor’s intent. 625 F.2d at 764. Nevertheless, as in
 
 Garman,
 
 under the circumstances of this case, we conclude that further litigation concerning the reasonableness of the bank’s reliance is unnecessary. The evidence indicates that First National, faced with a second renewal request, wished assurance that its long-time customer had sufficient resources to pay the obligation. This assurance took the form of a listing of assets and a promise, as provided in the last paragraph of the letter,
 
 see
 
 footnote 3,
 
 supra,
 
 that “if the loan is not paid ... [the debtor] agreefs] to secure the loan with an Assignment of Beneficial Interest in [our home].” No evidence in the record indicates that the bank’s reliance upon the letter was unreasonable.
 

 Accordingly, the judgment of the district court is reversed and the cause is remanded for the entry of a judgment in favor of the First National Bank of Lansing.
 

 [1]
 

 . Unpublished Order Bankruptcy No. 79-60904 (November 21, 1980). The Bankruptcy Court’s order was affirmed by the United States District Court for the Northern District, Unpublished Order, No. 81-C-212 (May 5, 1982).
 

 [2]
 

 . Bankruptcy Code, 11 U.S.C. § 523, states in pertinent part:
 

 § 523. Exceptions to discharge;
 

 (a) A discharge under section 727, 1141, of 1328(b) of this title does not discharge an individual debtor from any debt—
 

 (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit by—
 

 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor’s or an insider’s financial condition; or
 

 (B) use of a statement in writing—
 

 (i) that is materially false;
 

 (ii) respecting the debtor’s or an insider’s financial condition;
 

 (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
 

 (iv) that the debtor caused to be made or published with intent to deceive.
 

 [3]
 

 . The written statement reads:
 

 February 15, 1979
 

 First National Bank of Lansing 3256 Ridge Road Lansing, IL 60438 Gentlemen:
 

 In consideration of your renewing our unsecured note in the amount of $32,000.00 for an additional 90 days, we wish to advise you that this loan will be repaid from the three sources indicated below:
 

 1. Life insurance policies cash surrender value loan proceeds — $10,000.00
 

 2. Sale of lots — $15,000.00
 

 3. Sale of Mico stock — $8,000.00
 

 We further agree that if this loan is not paid or substantially reduced, we agree to secure the loan with an Assignment of Beneficial Interest in a land trust which will hold title to our home located at 9543 Marigold Lane, Munster, Indiana. The value of the property is approximately $85,000.00 subject to a $35,-000.00 mortgage, or an equity of $50,000.00. Sincerely yours,
 

 (signed)
 

 Orrin C. Kreps, Jr. (signed)
 

 Margaret W. Kreps
 

 [4]
 

 . Specifically, the Bankruptcy Court found:
 

 There is no question that the statement was false with respect to the inclusion of sale of lots as a source for repayment of the loan. The only lot Kreps owned was the one on which his house was located. The evidence would support contrary arguments. That statement was prepared by Rynberk. Kreps said about it that it was Rynberk’s interpretation of what was discussed, but acknowledged there must have been a discussion about that item. He said he only glanced at it and did not see that it included lots. There is a question whether Kreps had intent to deceive. However, the statement is a very simple writing. The sale of lots stands out prominently. If there was no question about reliance, the decision about the statement might have gone against Kreps on the basis that his failure to detect the error constituted a reckless disregard or indifference to the actual facts.
 
 Morimura, Arai & Company v. Taback,
 
 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586 (1929);
 
 In re Houtman,
 
 (9th Cir.1978) 568 F.2d 651.
 

 Unpublished Order Bankruptcy No. 79-60904 (November 21, 1980) at 3.