**In the Matter of Roxolana HARASYMIW, Appellant,**

v.

**SELFRELIANCE FEDERAL CREDIT UNION, Appellee.**

**No. 87 C 7747.**

United States District Court, N.D. Illinois, E.D.

March 2, 1989.

William M. Getzoff, Getzoff & Getzoff, Chicago, Ill., for appellant.

Elenie K. Huszagh, Boorstein & Huszagh, Chicago, Ill., for appellee.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

The appellant Roxolana Harasymiw brings this appeal of the United States Bankruptcy Court's July 22, 1987 decision in this case. In its decision, the bankruptcy court found that Selfreliance Federal Credit Union met its burden of showing that Harasymiw's $150,000 debt should not be discharged pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(2)(B). In her appeal, Harasymiw challenges the bankruptcy court's finding of dischargeability under both sections. The court affirms the judgment of the bankruptcy court for the following reasons.

### I

### *Factual Background*

The factual background of this matter, as found by the Bankruptcy Court in its findings of fact, is as follows.[1] The Selfreliance Federal Credit Union is an association of approximately 6,000 persons of Ukranian descent of affiliation in Chicago. *In Re: Harasymiw*, No. 84 B 16151, Slip op. at 1 (Bankr.N.D.Ill. July 22, 1987). Roxolana Harasymiw, who worked part-time with Selfreliance as a high school student, later became the credit union's manager and treasurer. She was a director between 1974 and 1983 and was a vice-president between 1981 and 1983. In addition, Harasymiw, who passed the Illinois Bar Examination in 1975, performed certain legal services for Selfreliance. *Id.* at 1–2. In late July or early August of 1981, Harasymiw applied for a $150,000 loan from Selfreliance. In her loan application, she listed several items of proposed collateral to secure the loan. One of the proposed items was an assignment of the beneficial interest in the Exchange National Bank Trust No. 35464 ("Trust"). The Trust was the owner of the property located at 917 South Western Avenue in Chicago. *Id.* at 2.

---

1. The court notes that it will not set aside the factual findings of the bankruptcy court unless they are clearly erroneous. *Matter of Hilligoss,* 849 F.2d 280, 281 (7th Cir.1988). Furthermore, the court will review "the legal conclusions determined by the bankruptcy court *de novo.*" *Id.*

Harasymiw provided Selfreliance with Chicago Title Insurance Company's title commitment in connection with her loan application. The commitment reflected two mortgage liens against the 917 Property in the amounts of $19,000 and $140,000 respectively. The commitment stated that the 917 Property has a value of $170,000. Harasymiw listed the property as having a value of $180,000 in her loan application. The application also included an appraisal, which listed the 917 Property as having a $269,000 value, and a contract for the sale of the 917 Property ("Perez Constract"), which listed its value at $267,000. On July 22, 1981, Harasymiw was aware that the Trust had executed a purchase money mortgage which further encumbered the 917 Property by $128,000. *Id.* at 3. This mortgage was recorded on July 24, 1981.

Selfreliance retained an independent attorney to determine whether the documents provided by Harasymiw were what they purported to be. The attorney, who was not retained to investigate all of the representations made by Harasymiw, failed to discover the existence of the $128,000 encumbrance on the 917 Property. On August 21, 1981, Selfreliance, who relied on Harasymiw's representations, approved the loan to her. Harasymiw prepared the disbursement voucher for the loan and the proceeds were distributed on August 25. Selfreliance was unaware of the additional $128,000 encumbrance on the 917 Property when it approved the loan. If Selfreliance had known of this additional encumbrance, it would not have approved the loan. *Id.* at 5. At the time the loan was approved, Selfreliance had a loan policy in effect. This policy, which was not a fixed standard, provided Selfreliance with guidelines for the approval of loans. Selfreliance dealt with loans on a case-by-case basis within the Rules and Regulations of the National Credit Union Administration.

## II

### 11 U.S.C. § 523(a)(4)

In Count I of its amended complaint, Selfreliance sought to have Harasymiw's $150,000 debt declared nondischargeable pursuant to 11 U.S.C. § 523(a)(4). The bankruptcy court found that Selfreliance had satisfied its burden of showing non-dischargeability under this section. To show that Harasymiw's debt is non-dischargeable under 11 U.S.C. § 523(a)(4), [Selfreliance] must establish that:

1) an express trust existed,

2) the debt was caused by fraud or defalcation, and

3) the debtor acted as a fiduciary to the creditors at the time the debt was created.

*Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987). Selfreliance must prove each element by clear and convincing evidence. *Matter of Bogstad,* 779 F.2d 370, 372 (7th Cir.1985). On appeal, Harasymiw contends that Selfreliance failed to show the existence of an express trust. The court agrees and finds that Harasymiw's debt is not non-dischargeable under § 523(a)(4).

In its opinion, the bankruptcy court acknowledged that "[f]iduciary capacity as used in section 523(a)(4) has consistently been construed as describing something created under an express trust...." *Harasymiw,* Slip op. at 6. However, the court failed to find that an express trust existed in this case. The "usual elements of an express trust have traditionally included an explicit declaration of trust, a clearly defined trust *res,* and an intent to create a trust relationship." *In Re Janikowski,* 60 B.R. 784, 789 (Bankr.N.D.Ill.1986); *In Re Thornton,* 544 F.2d 1005, 1006 (9th Cir. 1976); *In Re Kelley,* 84 B.R. 225, 229 (Bankr.M.D.Fla.1988); *In Re Martin,* 35 B.R. 982, 985 (Bankr.E.D.Pa.1984). There is no evidence in this case that the money on which the debt is based was *entrusted* to Harasymiw. *See In Re Gans,* 75 B.R. 474, 490 (Bankr.S.D.N.Y.1987) (emphasis in original) ("the money or property on which the debt is based must have been *entrusted* to the debtor-fiduciary"). The contractual relationship arising out of a loan transaction is insufficient to create the required express trust. *See In Re Martin,* 35 B.R. at 985; *In Re Thornton,* 544 F.2d at 1006–

07; *In Re Gans,* 75 B.R. at 490 (and cases cited within).

In *In Re Gans,* the court noted the distinction between the relationship of a trustee and beneficiary and the relationship of a debtor and creditor. The court noted that

> [a] trust involves a duty of the fiduciary to deal with particular property for the benefit of another. The beneficiary of the trust has an equitable interest in the trust property and is, in fact, its equitable owner. The debtor-creditor relationship, on the other hand, involves only the obligation to pay money; it endows the creditor with merely a personal claim against the debtor.

*In Re Gans,* 75 B.R. at 490, *quoting In Re Nova Real Estate Investment Trust,* 23 B.R. 62, 66–67 (Bankr.E.D.Va.1982). There is no suggestion that Harasymiw held the loan proceeds in trust for Selfreliance. The parties' relationship was that of a debtor and a creditor.

■ In its opinion, the bankruptcy court focused on Harasymiw's status as a director and attorney of Selfreliance to find that a fiduciary relationship existed for the purposes of § 523(a)(4). This court does not quarrel with the proposition that "[a] fiduciary relationship exists as a matter of law between an attorney and client and *all* transactions growing out of such a relationship are subject to the closest scrutiny." *Harasymiw,* Slip op. at 7 (emphasis in original). This court also acknowledges that an attorney may, under some circumstances, be held to be a fiduciary under § 523(a)(4). For example, the court in *In Re Janikowski* found that a lawyer who created a debt in the course of representing his client by failing to properly deal with the client's property was a fiduciary for the purposes of the Act. *In Re Janikowski,* 60 B.R. at 789. The mishandled property was held to be the trust *res. Id.* This case is distinguishable from *In Re Janikowski* because Harasymiw was *not* acting in her capacity as an attorney, director, or officer when the debt was created through the execution of the loan. *See* Transcript at 88 (Harasymiw did not take the loan money in the capacity as an attorney). Consequent-

ly, she was not acting in a fiduciary capacity with respect to the debt for the purposes of § 523(a)(4). Consequently, Selfreliance has failed to meet its burden of establishing that the debt is non-dischargeable under this section. Accordingly, the bankruptcy court's judgment with respect to Count I of the amended complaint is reversed.

### III

### *11 U.S.C. § 523(a)(2)(B)*

■ In Count II of its amended complaint, Selfreliance sought to have Harasymiw's debt declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). Under § 523(a)(2)(B), Selfreliance

> has the burden of showing by clear and convincing evidence that the $150,000.00 debt was obtained by the use of a statement in writing: (1) that was materially false; (2) upon which [it] reasonably relied in making the loan; and (3) that [Harasymiw] made with the intent to deceive.

*Harasymiw,* Slip op. at 10 (and cases cited within). Harasymiw asserts explicit and implicit challenges to several factual findings which underlay the bankruptcy court's decision. The court is not persuaded by Harasymiw's challenges and will affirm the bankruptcy court's decision on Count II of the amended complaint.

In its opinion, the bankruptcy court found that

> [a]t the time the loan was approved, [Selfreliance] had a loan policy in effect. Such policy was not a fixed standard. Rather, it provided [Selfreliance] with guidelines for the approval of loans. Loans were dealt with on a case-by-case basis within the Rules and Regulations of the National Credit Union Administration.

*Id.* at 5. Harasymiw criticizes the court for completely adopting Selfreliance's position on this point. As an initial matter, this court notes that it is not and "should not ... be eager to intrude into the business practices of lending institutions." *Bogstad,* 779 F.2d at 373 n. 4; *see also Matter*

*of Garman,* 643 F.2d 1252, 1258 (7th Cir. 1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981) ("it is not the court's duty ... to second guess a creditor's decision to make a loan or to set loan policy for the creditor.") Harasymiw suggests that the loan policy "was more than a guideline" in this case due to the necessity of ensuring that she, as a director, did not receive preferential treatment over other credit union members. Harasymiw's Brief at 17. However, it is apparent that a rigid adherence to the loan policy was not necessary because it is undisputed that Harasymiw did not receive preferential treatment. Harasymiw's Reply at 6.

Harasymiw also questions Selfreliance's deviation from the loan policy. She assails the bankruptcy court's findings claiming that there is "no evidence to justify [Selfreliance's] deviation from the loan policy." This contention might have persuasiveness if Selfreliance had previously followed the loan policy in a rigid manner and inexplicably deviated from it. However, there is no such evidence here. Harasymiw has failed to make a showing sufficient to enable this court to conclude that the above factual finding is clearly erroneous.[2]

Harasymiw next challenges the materiality of her non-disclosure of the additional $128,000 encumbrance on the 917 Property. Material falsity has been defined as "an important or substantial untruth." *Bogstad,* 779 F.2d at 375, *quoting In Re Mutschler,* 45 B.R. 482, 491 (Bankr.D.N.D. 1984). An important indicator of materiality is "whether the lender would have made the loan had he known of the debtor's true financial condition." *Id.* at 375. In this case, the bankruptcy court explicitly found that Selfreliance would not have approved the loan if it had known of the undisclosed encumbrance. *Harasymiw,* Slip op. at 4. Harasymiw contests this finding by advancing her theory that the loan would

have been made even if the additional encumbrance had been disclosed. Her theory, however, is premised on several faulty assumptions. First, she assumes the consistent application of the loan policy. *See* Harasymiw's Brief at 17, 18, 20, 21, 23, 25, 26; Harasymiw's Reply at 9–10. As the bankruptcy court found, however, the loan policy was a "guideline" and loans were dealt with on a "case-by-case basis." *Harasymiw,* Slip op. at 5. Thus, Harasymiw's conclusion that the undisclosed mortgage was immaterial to the determination of whether the loan would have been approved does not necessarily follow.

Harasymiw's next contentions concern the valuation of the 917 Property. First, she correctly notes that the bankruptcy court failed to make an explicit finding of the 917 Property's value. The bankruptcy court did note that Harasymiw submitted four different valuations of the property in her loan application. She estimated the property's value at $180,000, the commitment reflected a value of $170,000, an insurance appraisal reflected a value of $269,000, and the Perez contract reflected a value of $267,000. Bohdan Watral, Selfreliance's Treasurer, indicated that Selfreliance relied on the $267,000 value listed in the Perez contract. Transcript at 48, 59, 79. Harasymiw strenuously contends that it was clearly erroneous and unreasonable for Selfreliance to rely on any valuation of the property that was over $180,000. Harasymiw's Brief at 29. Specifically, she argues that her statement that the property was worth $180,000 was a sufficient "red flag" to make any reliance on the higher property values unreasonable.

Harasymiw cites *In Re Hunt,* 30 B.R. 425 (Bankr.M.D.Tenn.1983) in support of this proposition. The *Hunt* case is distinguishable. In *Hunt,* the court stated that "[a] lender cannot claim reasonable reliance

**2.** As the Supreme Court has held, "[a] finding is 'clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. Bressemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), *quoting United States v. U.S. Gypsum Co.,* 333

U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Moreover, "[i]f the [bankruptcy court's] account of the evidence is plausible in light of the record in its entirety, [this court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* 470 U.S. at 573–74, 105 S.Ct. at 1511–12.

on a financial statement that the lender *knows is inaccurate or incomplete*—particularly where the lender has information in its own files that confirms the inaccuracies and shows the need for further investigation or confrontation with its customer." *In Re Hunt*, 30 B.R. at 450 (emphasis added). In *Hunt*, the creditor had knowledge that the debtor's debts to unsecured creditors were understated on applications by more than $5,500. *Id.* at 451.

In this case, there is no indication that Harasymiw's inclusion of the four different valuations of the 917 Property in her application rendered her application incomplete or inaccurate. In addition, there is no evidence that Selfreliance had any information in its files that would show that any of the valuations were inaccurate. As Harasymiw notes, each valuation was prepared with a different purpose in mind. Harasymiw's Brief at 27–29. Thus, the inclusion of the varying valuations in the financial statement does not preclude Selfreliance from reasonably relying on it. Moreover, the bankruptcy court's finding that members of Selfreliance relied on Harasymiw and considered her to be a person of credibility does not compel the conclusion that Selfreliance should have accepted her valuation of the property. After all, she provided the other three valuations as well. Selfreliance's acceptance of one of these other valuations does not render the court's finding of credibility and reliance "absurd" as contended by Harasymiw. Harasymiw's Reply at 17. The Bankruptcy Code "was not intended to empower the court to 'undertake a subjective evaluation and judgment of a creditor's lending policies and practices.' " [3] *In Re Kreps*, 700 F.2d 372, 375–76 (7th Cir.1983), *quoting Matter of Garman*, 625 F.2d 755, 759 (7th Cir.1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981).

Finally, Harasymiw asserts that Selfreliance did not in fact rely on her for the accuracy of the legal aspects on the loan. Harasymiw's Reply at 12. In support of this assertion, Harasymiw cites to the testimony of Ulana Hrynewych who was Chairperson of the Credit Committee when the loan was approved. Hrynewych testified that the independent attorney Popel, and not Harasymiw, reviewed the legal aspect of the loan application. Transcript at 141–42. She also testified that Popel was requested to determine whether the property was clear of any liens. *Id.* at 142. However, the bankruptcy court apparently disregarded Hrynewych's testimony and accepted the testimony of Watral, the Treasurer. Watral testified that Popel was only requested to determine if the documents submitted were what they purported to be. *Id.* at 41. Popel was never asked to investigate the representations. *Id.; see Harasymiw*, Slip op. at 4.

The bankruptcy court findings that turn on the credibility of witnesses are to be given due deference. *See Matter of Hilligoss*, 849 F.2d at 281 (citing to Bankruptcy Rule 8013). Furthermore,

> when a trial judge's finding is based on his [or her] decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can never be clear error.

*Anderson*, 470 U.S. at 575, 105 S.Ct. at 1512. In this instance, the bankruptcy court's finding is *supported* by extrinsic evidence. Selfreliance approved the loan and disbursed the proceeds *before* it received a letter from Popel which noted that the 917 Property was encumbered by the two disclosed mortgages. If Selfreliance was relying entirely on Popel to insure that the property was clear of liens, it would not have approved the loan prior to receiving the above letter.

Moreover, there is ample evidence to support the bankruptcy court's finding of reliance. At the time of her loan application, Harasymiw had held a variety of positions

---

**3.** Although the court in *Garman* was referring to Section 17(a)(2) of the Bankruptcy Code, 11 U.S.C. § 35(a)(2), the predecessor to § 523(a)(2)(B), Congress indicated that the present statute "is merely a codification of the cases construing section 17(a)(2)." *In Re Kreps*, 700 F.2d at 376.

of responsibility at Selfreliance. Selfreliance had relied on her legal and business advice during the course of her employment with the credit union. As the Seventh Circuit has held, an "on-going business relationship[ ] ... can excuse a bank from verifying a financial statement." *Matter of Bogstad,* 779 F.2d at 373 n. 4 (citations omitted); *In Re Kreps,* 700 F.2d at 373–76; *Matter of Garman,* 643 F.2d at 1253–57. In addition, Watral testified that Selfreliance relied on the documents that were submitted in support of the loan application. Transcript at 41. The court notes that

> there are no facts presented suggesting that [Selfreliance] utilized the financial statement simply as a 'prefunctory device to contest discharge, and not used to be relied thereon' ..., was simply 'burying its commercial head in the sand,' ... or that [Selfreliance's] reliance on the financial statement was so unreasonable as not to be actual reliance at all. (citations omitted).

*Matter of Garman,* 643 F.2d at 1257, *quoting* 1A *Collier's on Bankruptcy,* ¶ 17.16 at 1636 n. 17 (14th ed.1979) *and In Re Arden,* 2 Bankr.Ct.Dec. 204, 207 (D.R.I.1975). Given the facts and circumstances of this case, the court concludes that the bankruptcy court's finding that Selfreliance relied on Harasymiw's financial statement was not clearly erroneous.[4]

> In conclusion, the court must determine whether the bankrupt obtained credit ... through the creditor's reliance on a materially false financial statement containing information apparently sufficient to obtain an accurate picture of the debtor's financial condition with regard to a reasonable decisional factor in the loan decision, filed by the debtor with the intent to deceive the creditor.

*Matter of Garman,* 643 F.2d at 1258. This court will affirm the bankruptcy court's finding that Selfreliance has met its burden of showing that Harasymiw's loan is non-

dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

### Conclusion

For the foregoing reasons, the bankruptcy court's judgment on Count I of the amended complaint is reversed. The bankruptcy court's judgment on Count II of the amended complaint is affirmed.

---

**4.** The court further notes that "[t]here is no requirement that the creditor place exclusive reliance on the financial statement. Partial reliance is sufficient." *Matter of Garman,* 643 F.2d at 1253 n. 1.