In re Mark McIlwain
THURMAN, Debtor.

FIRST NATIONAL BANK OF NORTH-
WEST FLORIDA, f/k/a American
National Bank, Plaintiff,

v.

Mark McIlwain THURMAN, Defendant.

Bankruptcy Nos. 90–02053, 90–9030.

United States Bankruptcy Court,
N.D. Florida,
Panama City Division.

Oct. 31, 1990.

Mark Hildreth, Tallahassee, Fla., for plaintiff.

David L. Fleming, Pensacola, Fla., for defendant.

### ORDER ON DEFENDANT'S MOTION TO DISMISS

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER is before this court on defendant's Motion to Dismiss plaintiff's Complaint for failure to state a claim upon which relief can be granted. The plaintiff subsequently responded to defendant's mo-

tion, and a hearing was held on September 20, 1990. During the hearing, it was determined that Count II of plaintiff's complaint stated a cause of action, and thus, defendant's Motion to Dismiss was denied as it relates to Count II. The issues in Count I were taken under submission and are the subject of this order. Based on the arguments presented by counsel at the hearing and the memoranda submitted by both parties, defendant's Motion to Dismiss is granted as to Count I.

In May of 1985 Thurman borrowed $700,000.00 from First National Bank of Northwest Florida (FNB) (then known as American National Bank) and gave the bank mortgages on two tracts of land as security. One was an 80 acre tract valued at $1,783,694.75, and the other was a 360 acre tract valued at $2,200,000.00. Portions of the 80 acre tract were released during 1985 pursuant to a release agreement. On February 18, 1986, Thurman was elected to the Board of Directors of FNB. On or about March 27, 1986, while Thurman was still a director of the bank, he requested through the bank's president that the bank release 40 acres of the 360 acre tract from the mortgage, representing that the bank would be adequately secured by the remaining 320 acres. On March 27, 1986, FNB agreed to the partial release of the 40 acres.

In February 1987, Thurman resigned as director of FNB. In November 1987, his obligation with the bank went into default, and FNB obtained a judgment against him. Thereafter, Thurman deeded to the bank the 320 acres which he had pledged as collateral, and a subsequent sale of the property by the bank produced only $80,000.00, which was far short of the $398,605.50 (plus interest and costs) judgment the bank had obtained against him.

In order to recover the money which it lost as a result of the release, FNB is seeking a declaration of nondischargeability pursuant to 11 U.S.C. § 523(a)(4). The extent of the plaintiff's claim of nondischargeability is the value of the 40 acres released to Thurman as of March, 1986. FNB alleges that Thurman, at the time he was a director of the bank, committed a defalcation by obtaining a partial release of a personal mortgage from the president of the bank without either disclosing his intentions to the board of directors or ascertaining the value of the collateral he left with the bank.

## DISCUSSION

Section 523(a)(4) states:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

This section addresses three specific instances when a debt will be declared nondischargeable. Namely, a debtor cannot receive a discharge of a debt if he engaged in a fraud or defalcation, embezzlement, or larceny. The first of these three acts, commission of a fraud or defalcation, must occur while the debtor is acting in a fiduciary capacity. Thus, a fiduciary relationship must exist before a debtor can be accused of committing a fraud or defalcation under § 523(a)(4).

 It is apparent that a corporate director has a fiduciary relationship with the corporation, but the question is whether that fiduciary relationship occupied by a corporate director falls within the meaning of "fiduciary capacity" as it is used in § 523(a)(4). *In re Galbreath*, 112 B.R. 892, 898 (Bkrtcy.S.D.Ohio 1990). Courts addressing this question have found that a corporate director does indeed fall within the parameters of § 523(a)(4). *See*, *Galbreath*, 112 B.R. at 900; *In re Schiraldi*, 116 B.R. 359 (Bkrtcy.D.Conn.1990); *In re Decker*, 36 B.R. 452 (Bkrtcy.D.N.D.1983); *In re Cowley*, 35 B.R. 526 (Bkrtcy.D.Kan. 1983). This court agrees with the reasoning in the prior cases and likewise concludes that a corporate director is within the definition of fiduciary as set forth in § 523(a)(4) of the bankruptcy code. More particularly, a director of a bank acts as a fiduciary of the bank for purposes of § 523(a)(4). Therefore, Thurman, when he

was a director of FNB, was a fiduciary of the bank.

■ Having established that Thurman was a fiduciary of FNB, however, does not end the inquiry. Section 523(a)(4) states that the fraud or defalcation must have occurred *while acting in a fiduciary capacity.* In other words, Thurman must have been acting in his fiduciary capacity when the alleged defalcation occurred. 3 *Collier on Bankruptcy* ¶ 523.14 (15th ed. 1990).

In essence, FNB's argument is that a bank director continually has the status of a bank director, and any act he performs is an act as a fiduciary of the bank. Once Thurman became a director of the bank, therefore, he could not act solely as a debtor; he could only act as a debtor with a fiduciary duty to the bank.

Plaintiff, however, fails to allege in its complaint that Thurman was acting in his fiduciary capacity when he asked for the partial release of mortgage. FNB states two points: Thurman was a director of the bank and owed a fiduciary duty to it, and he breached his fiduciary duty when he obtained a release without first consulting with the board of directors. These two factors alone do not support the conclusion that Thurman was acting in his fiduciary capacity at the time the release was obtained.

We agree that Thurman owed a fiduciary duty to FNB, but the plaintiff fails to establish any actions on the part of Thurman which would constitute a breach of his fiduciary duty. Furthermore, FNB has not established a causal connection between its loss and Thurman's fiduciary relationship with the bank.

For example, FNB has not asserted that it was violative of bank policy for the president to approve partial releases. The bank merely states that Thurman should have gone to the board. Moreover, it has not been alleged that Thurman obtained the release because of his status as a director. Effectively, FNB is seeking to impose an extra duty on the debtor in his actions as an ordinary customer simply because he is a director. It appears as though the plaintiff would have this court impose a type of strict liability on the defendant just because he is a director of the bank. We cannot impose this extra liability on him.

Case law suggests that it is possible to be a director of a bank and still carry on ordinary commercial transactions with that bank. *See, e.g., In re Wing,* 96 B.R. 369 (Bkrtcy.M.D.Fla.1989); *Harasymiw v. Selfreliance Federal Credit Union,* 97 B.R. 924 (N.D.Ill.1989). In *Wing,* for instance, the debtor was on the board of directors of the bank from which he was borrowing money. In order for the debtor to obtain his loans, he had to keep financial statements on file with the bank. Even though the court found that the debtor intentionally falsified his financial statements, it failed to find that the debtor was guilty of a fraud or defalcation while acting in a fiduciary capacity. *Wing,* 96 B.R. at 373, 374. The court found that the bank did not rely on the debtor's false financial statements, and the debtor's actions were "insufficient to rise to the level of breach of fiduciary duty." *Id.* Moreover, the court stated, "[w]hile a corporate director ought to scrutinize his self-dealings with the corporation he helps control, the dealings in this case can only be classified as an ordinary commercial transaction." *Id.* at 374.

It is possible, therefore, for Thurman to be both a director of FNB and an ordinary mortgagor. Consequently, when he obtained the partial release of mortgage, Thurman was not necessarily acting in a fiduciary capacity.

The allegations in this case even if true do not show that Thurman was acting in his fiduciary capacity when he asked the president of the bank for a release; he was acting as any other debtor. Since he was acting as an ordinary debtor, he did not breach any fiduciary duty to FNB when he obtained the partial release. Thus, Thurman did not violate the provisions of § 523(a)(4) and his debt to the bank is dischargeable.

■ The plaintiff also asserts that Thurman had a duty to disclose to the

board which is based on Florida Statutes § 607.0832(1) (1990), (formerly § 607.124(1)):

(1) No contract or other transaction between a corporation and one or more of its directors or any other corporation, firm, association, or entity in which one or more of its directors are directors or officers or are financially interested shall be either void or voidable because of such relationship or interest, because such director or directors are present at the meeting of the board of directors or a committee thereof which authorizes, approves, or ratifies such contract or transaction, or because his or their votes are counted for such purpose, if:

(a) The fact of such relationship or interest is disclosed or known to the board of directors or committee which authorizes, approves, or ratifies the contract or transaction by a vote or consent sufficient for the purpose without counting the votes or consents of such interested directors;

(b) The fact of such relationship or interest is disclosed or known to the shareholders entitled to vote and they authorize, approve, or ratify such contract or transaction by vote or written consent; or

(c) The contract or transaction is fair and reasonable as to the corporation at the time it is authorized by the board, a committee, or the shareholders.

This section, however, deals with the validity of actions taken by the board or a committee in which an interested director participates. If a director is participating in a board action in which he has an interest, then § 607.124(1) requires a disclosure on his part. The statute does not state that an individual board member must go before the board of directors for a particular transaction. Thus, there is no affirmative duty for Thurman to take his particular transaction to the board, and, likewise, § 607.124(1) does not mandate that he approach the board.

## CONCLUSION

A motion to dismiss is a tool to test the facial sufficiency of the other party's state- ment of claim for relief. *Linder v. Calero*, 747 F.Supp. 1452, 1453 (S.D.Fla.1990). It "is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity." *Id.* In the present case, we are asked to consider the sufficiency of FNB's complaint to have one of Thurman's debts be declared nondischargeable. To make this decision, we rely on the plaintiff's complaint, memoranda submitted by both parties, and the arguments of counsel during the hearing on September 20, 1990.

The Supreme Court explained the test to determine the sufficiency of a complaint:

In appraising the sufficiency of the complaint we follow ... the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Linder*, quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted). Indeed, after examining the complaint, memoranda, and notes from the hearing, we can imagine no set of facts which would entitle FNB to relief under Count I of its complaint. At the hearing, FNB did not allege that the debtor engaged in any type of fraud. The plaintiff was only relying on the concurrence of Thurman's status as both a director and a debtor to assert that a defalcation had occurred. Without more, we cannot find that the asserted facts, nor any other set of facts, would entitle the plaintiff to the relief it seeks in its complaint.

Based on the foregoing, it is hereby

ORDERED AND ADJUDGED that defendant's Motion to Dismiss, as to Count I of plaintiff's Complaint to Determine Dischargeability, is granted.

DONE AND ORDERED.